UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT SCOTT GRAY, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:13 CV 918 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before me on Robert Gray's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in federal custody. In his motion Gray alleges that his Sixth Amendment right to the effective assistance of counsel was violated. Because Gray's motion is meritless, it will be denied for the reasons that follow.

**I.      Background**

The following facts are established by Gray's plea agreement entered in the underlying criminal case:

Defendant Robert Scott Gray was President and Owner of SG Print & Mail, Inc. ("SG Print and Mail), a Missouri Corporation, also doing business as SG Print & Mail. Donna Beckman was an employee of SG Print and Mail from in or about January 2005 to in or about September 2007. Her duties at SG Print and Mail included the preparation of the U.S. Postal Service paperwork that accompanied bulk mailings by SG Print and Mail. Teresa Tremusini was an employee of the U.S. Postal Service. Teresa Tremusini was Postmaster of the Festus, Missouri, Post Office on December 14, 2005 until approximately December 12, 2006. Michael A. Jones was a supervisor of the U.S. Postal Service from at least January 2005 to November 2009. SG Print & Mail provided direct mail services to clients. A client would contract with SG Print & Mail to perform a direct mailing, for example, of 30,000 mail pieces. SG Print & Mail sometimes contracted with a printer to print the mail pieces. SG Print & Mail would then prepare the direct mailing by placing addresses on each mail piece and sorting the mail pieces by address/zip code for bulk

mailing.

The U.S. Postal Service provides mailers with several methods for affixing postage to mail pieces. A mailing permit (also known as a permit imprint indicia) is one of those methods. SG Print & Mail had mailing permit number 465 issued in Festus, Missouri for Presorted Standard Postage. The permit imprint authorization is specific to the type of mailings the customer will be entering into the mail system, for example, First-Class Mail, Standard Mail or Package Services. The mailing permit number is unique for the city in which it is issued. A customer with an authorized mailing permit number has the ability to have their postage preprinted on their mailings with payment made on account. Once the mail pieces are prepared with the permit imprint, the mailer is responsible for bringing the entire mailing, along with a Postal Postage Statement (PS Form 3602, Postage Statement - Standard Mail) which is a detailed listing of the particulars for the mailing for postage payment purposes. The U.S. Postal Service employee has the duty to verify the accuracy of the PS Form 3602 either when the mailing is brought to the Post Office by the bulk mailer or at the bulk mail customer's plant.

The U.S. Postal Service permits bulk mailers to receive a larger discount by transporting the mail to the destination post office themselves rather than have the U.S. Postal Service transport the mail to the destination post office. This type of discount is commonly referred to as a "Drop Shipment." Mailers using the Drop Shipment method must complete a PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance and present it along with the Postage Statement at the time of the mailing. One PS Form 8125 is required for each post office of destination.

As an alternative to using a permit imprint, bulk mailers have the ability to apply a pre-cancelled stamp to their mail. Thus, the bulk mailer would place an actual stamp on each bulk mail piece. These pre-cancelled stamps have a value of 10 cents and typically come in a roll of 10,000 stamps. Mailers choosing this option are required to designate their intent to use pre-cancelled stamps on their permit application. Only mailers with an active permit account are allowed to purchase pre-cancelled stamps. When mail bearing the pre-cancelled stamp is entered with the U.S. Postal Service, the mailer is then responsible for paying the full postage rate minus 10 cents for the pre-cancelled stamp. When a mailing using pre-cancelled stamps is presented to the U.S. Postal Service, the mailer must complete the Form 3602- Postage Statement- Standard Mail indicating the number of pre-cancelled stamps used in the mailing. In addition, the verifying Postal employee must indicate on the Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance (Box 20) whether the mailing is "permit," "stamped" or "meter."

Defendant and others defrauded the U.S. Postal Service by 1) falsely claiming that pre-cancelled stamps were used and 2) by concealing Form 8125s from the U.S. Postal Service so that mailings were not reported and the Postal Service was not paid for the mailings. In regards to the first scheme, between in or about January 2005, and in or about December 2006, in the Eastern District of Missouri and elsewhere, defendant and others directed Donna Beckman to submit false Form 3602s- Postage Statements- Standard Mail indicating that a certain number of pre-cancelled stamps were used in mailings when, in truth and fact, defendant and others knew that said number of pre-cancelled stamps were not used in the mailings. Defendant through SG Print

and Mail paid the U.S. Post Office postage only in the amount of the total postage minus the false number of pre-cancelled stamps when, in truth and fact, defendant knew that said number of pre-cancelled stamps had not been used in the mailings.

Specifically, on or about April 25, 2006, in the Eastern District of Missouri and elsewhere, defendant and others, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and attempting to do so, did knowingly and willfully deposit with a commercial or private interstate carrier to be delivered by said carrier and knowingly caused to be delivered by a commercial or private interstate carrier a package addressed to: United States Post Office, Menlo Park, CA 94025 containing 12,952 pieces of mail from Towne Ford, that defendant claimed bore pre-cancelled stamps when, in truth and fact, defendant and others knew that they did not bear pre-cancelled stamps.

On or about August 16, 2006, in the Eastern District of Missouri and elsewhere, defendant and others, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and attempting to do so, did knowingly and willfully deposit with a commercial or private interstate carrier to be delivered by said carrier and knowingly caused to be delivered by a commercial or private interstate carrier a package addressed to: United States Post Office, Saint Cloud, MN 56301 containing 11,364 pieces of mail from Denny Heckers Hyundai, that defendant claimed bore pre-cancelled stamps when, in truth and fact, defendant and others knew that they did not bear pre-cancelled stamps.

On or about September 6, 2006, in the Eastern District of Missouri and elsewhere, defendant and others, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and attempting to do so, did knowingly and willfully deposit with a commercial or private interstate carrier to be delivered by said carrier and knowingly caused to be delivered by a commercial or private interstate carrier a package addressed to: United States Post Office, Lexington, KY 40517 containing 17,476 pieces of mail from Thoroughbred Chevrolet, that defendant claimed bore pre-cancelled stamps when, in truth and fact, defendant and others knew that they did not bear pre-cancelled stamps.

On or about October 25, 2006, in the Eastern District of Missouri and elsewhere, defendant and others, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and attempting to do so, did knowingly and willfully deposit with a commercial or private interstate carrier to be delivered by said carrier and knowingly caused to be delivered by a commercial or private interstate carrier a package addressed to: United States Post Office, Beaver Falls, PA 15010 containing 10,716 pieces of mail from Beaver County Dodge, that defendant and others claimed bore pre-cancelled stamps when, in truth and fact, defendant knew that they did not bear pre-cancelled stamps.

In regards to the second scheme to defraud the Post Office, mailers using the Drop Shipment method must complete a PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance and present it along with the Postage Statement at the time of the mailing. One PS Form 8125 is required for each post office of destination. Each Postal Postage Statement (PS Form 3602, Postage Statement- Standard Mail) may have dozens of PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms attached to it. In short, the Postal Postage Statement (PS Form 3602, Postage Statement- Standard Mail) is the summary of the mailing; the PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms provide the details of each mailing, including how many items will be mailed from each post office.

Between in or about October 2006, and in or about September 2007, in the Eastern District of Missouri and elsewhere, defendant and others directed Donna Beckman to submit false Form 3602s- Postal Postage Statements- Standard Mail indicating that a certain number of items were being mailed when, in truth and fact, defendant and others knew that a larger number of items were mailed than were reported on the Form 3602s - Postal Postage Statements - Standard Mail. Defendant and others directed Donna Beckman to submit to the Postal Service purportedly identical sets of Form 3602s- Postal Postage Statements- Standard Mail with the attached PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms when, in truth and fact, defendant knew that the copy kept by the Postal Service declared for payment less pieces than were actually mailed and said copy was missing some of the PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms while the copy "round-stamped" by the Postal Service employee and returned to defendant and Donna Beckman contained all the PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms.

Defendant through SG Print and Mail paid the U.S. Post Office postage only in the amount of the postage reported on the false Form 3602s- Postal Postage Statements - Standard Mail when, in truth and fact, defendant knew that said additional items would been mailed as reflected on the concealed PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms. Defendant sent the concealed PS Form 8125, Plant Verified Drop Shipment (PVDS) Verification and Clearance forms to the destination Post Offices with the mail items and said items were then mailed by the destination Post Offices.

Specifically, on or about October 12, 2006, in the Eastern District of Missouri and elsewhere, defendant and others, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and attempting to do so, did knowingly and willfully deposit with a commercial or private interstate carrier to be delivered by said carrier and knowingly caused to be delivered by a commercial or private interstate carrier a package addressed to: United States Post Office, Lansing, MI 48906 containing 9,596 pieces of mail from Courtesy Lincoln, that defendant and others claimed had been properly paid for when, in truth and fact, defendant knew that they had not been properly paid for.

Defendant paid U.S. Postmaster Teresa Tremusini $10,000 on August 10, 2006 and another $10,000 on August 29, 2006. Defendant caused to be paid to U.S. Postal Service Supervisor Michael Jones $10,000 on January 17, 2007. These payments were for or because of the approval of the PS Form 3602s, that is, as gratuities. These payments were not part of Tremusini's or Jones' salary or other lawful compensation.

USA v. Gray, 4:10 CR 83 RWS [Doc. # 125, Plea Agr., pp. 3-10].

On February 18, 2010, Gray was indicted on six counts of Mail Fraud, five counts of False Statements, and three counts of Bribery. On April 7, 2011, a superseding indictment was returned that charged Gray with six counts of Mail Fraud in violation of 18 U.S.C. §§ 2, 1341, five counts of False Statements in violation of 18 U.S.C. § 1001, and three counts of Offering Illegal Gratuities in violation of 18 U.S.C. §§ 2, 201(c)(1)(A). On April 20, 2011, Gray pled guilty to five counts of Mail Fraud, four counts of False Statements, and three counts of Offering Illegal Gratuities.

At his change of plea hearing, Gray was placed under oath and swore to testify truthfully, subject to the penalties of perjury. I held the following colloquy with Gray about his attorney:

> JUDGE: Have you had enough time to discuss your case with your attorney?
>
> GRAY: Yes, sir.
>
> JUDGE: Are you satisfied with his representation of you in this case?
>
> GRAY: Yes, sir.
>
> JUDGE: Is there anything you think your attorney should have done but did not do in representing you?
>
> GRAY: No, sir.

USA v. Gray, 4:10 CR 83 RWS [Doc. # 220, Plea Tr., pp. 5-6].

Gray told me he read and understood the plea agreement before he signed it and that everything contained in the document was true, as follows:

JUDGE: There is a plea agreement. If we look at the last page, the page marked 19, there are three signatures on this document. The middle signature purports to be your signature. Is that your signature, sir?

GRAY: It is, Your Honor.

JUDGE: Did you read this document before you signed it?

GRAY: I did.

JUDGE: Did you go over it with your lawyer?

GRAY: Yes, I did.

JUDGE: Did he answer all your questions?

GRAY: He did.

JUDGE: Do you believe you understand what's in this document?

GRAY: I do.

JUDGE: Is everything in here true?

GRAY: Yes.

JUDGE: Okay. There's nothing in here you disagree with but you just signed it anyway to get it done? I mean, there are some disagreements. The amount of loss is in dispute.

GRAY: There are some disagreements, yes. I understand that.

JUDGE: And they will remain in dispute until we have a hearing.

GRAY: Yes.

JUDGE: You understand that?

GRAY: I do understand that.

JUDGE: But given that caveat, everything in here is true?

GRAY: Yes.

[Id. at pp. 8-9].

At the plea hearing, the Government read its estimate of the loss, as follows:

The Government contends that the loss to the U.S. Postal Service from defendant's two schemes to defraud was a total of approximately $2,990,000 in 2005 and 2006. The loss from the stamp scheme was $2.27 million. The loss from the unreported mailings was $720,000. The loss from the unreported mailing scheme was $993,064 in 2007. The defendant contends that the loss to the postal service was a lower amount, and the parties agree that the Court will determine the amount of loss after evidence is presented at sentencing.

[Id. at pp. 28-29].

The Court then asked Gray if he was admitting the facts as described in the plea agreement, as follows:

COURT: Mr. Gray, is what the Assistant U.S. Attorney said true?

GRAY: Yes, Your Honor.

COURT: You did what she says you did?

GRAY: Yes, Your Honor.

[Id. at pp. 29].

A Presentence Report (PSR) was prepared which found Gray's Total Offense Level to be 24 based upon a loss of over $2.5 million but less than $7 million to the United States Postal Service. The PSR determined Gray's Criminal History Category to be I and his advisory guideline range under the United States Sentencing Guidelines to be 51 to 63 months. On July 20, 2011, Defense counsel filed twenty objections to the PSR, including objections to the amount

of loss and restitution contained in the PSR. On September 26, 2011, defense counsel filed a twenty-five page sentencing memorandum in which Gray made arguments concerning the amount of loss to the United States Postal Service and against mandatory restitution.

At the all-day sentencing hearing on October 3, 2011, testimony was received from Revenue Fraud Analyst James Pitterle, Postal Inspector Mark Hallisey, and Robert Beers. Gray also made an extensive offer of proof as to the testimony of Cheryl Bailey, Robert Beers, Paul Cook, Teresa Forsythe, Joe Gilberti, Rodger Huff, Mike Shelton, and Cheryl Washburn. At the end of the sentencing hearing, I sentenced Gray to a term of 51 months imprisonment, a term at the bottom of the 51 to 60 months sentencing guideline range. I also sentenced Gray to a three year term of supervised release to follow his release from incarceration and $3,894,630.10 in restitution.

Gray filed a timely appeal to the United States Court of Appeals for the Eighth Circuit. On appeal, Gray argued that "the district court's loss calculation does not reflect the 'fair market value of services provided to [Gray] less the amount actually paid for those services.'" United States v. Gray, 4:10 CR 83 RWS [Doc. # 237, 8th Cir. Opinion, pp. 8]. On July 31, 2012, the Court of Appeals affirmed Gray's sentence. United States v. Tremusini, et al., 688 F.3d 547 (8th Cir. 2012). Gray's Motion for Rehearing and Rehearing En Banc was denied on September 19, 2012.

**II.    Grounds for Relief**

Gray's § 2255 motion alleges the following ineffective assistance of counsel claims:

1)    Failure to expose government's failure to factor stamps Gray maintained in inventory into its reconciliation of stamp purchases to stamps used, contributing to

- 8 -

an overstated loss calculation of at minimum $500,000;

2) Failure to present the majority of the evidence defense counsel had in his possession that would have aided the Court in evaluating the fair market value of services the government alleged as fraudulently taken. Further, failure to understand and clearly explain the evidence defense counsel produced, resulting in an overstatement of loss by at least $1.6 million;

3) Failure to introduce vital evidence proving USPS's manipulation of data on postal forms that resulted in the loss presented by the government being overstated;

4) Failure to present all the errors in the data presented by the government, resulting in an overstated loss calculation of at minimum $300,000;

5) Ground 5 contains the following claims:

    a. Failure to invest adequate time in preparation for Gray's sentencing hearing;

    b. Failure to present witnesses that would have supported and provided credibility to Gray's arguments at sentencing;

    c. Failure to pursue the return to Gray of the $39,000 in stamps unlawfully possessed by Rick Decollo or, in the alternative, the application of the $39,000 to Gray's restitution;

    d. Failure to make himself and Gray aware of the augmented loss figure contained in the plea agreement Gray entered into on April 20, 2011 prior to the change of plea hearing, featuring $993,064 greater loss to the United States Postal Service than Gray anticipated;

> e. Failure to adequately communicate with Gray through the appeals phase of the case by ignoring Gray's directives regarding presentment of the proper grounds and additional supporting evidence for the direct appeal and accompanying oral arguments and engaging in only one legal call since Gray's incarceration.

**III. Analysis**

    A.   *Ineffective Assistance of Counsel Claims*

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Gray must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id.

Second, Gray "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of guilty pleas, a movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir.

1997). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56. The court need not address both components if the movant makes an insufficient showing on one of the prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

Gray's ineffective assistance of counsel claims must be evaluated in light of the fact that he entered a guilty plea in the underlying criminal case. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (internal citations omitted). Furthermore, even a defendant's reliance on his counsel's opinion as to the potential length of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly pleaded guilty. See Hollis v. United States, 687 F.2d 257, 260 (8th Cir. 1982); Roberson v. United States, 901 F.2d 1475, 1478 (8th Cir. 1990). In the underlying criminal case, Gray entered a guilty plea at his change of plea hearing. At the change of plea hearing, Gray also expressed complete satisfaction with his defense counsel's representation of him.

In Grounds 1, 2, 3, and 4 of Gray's motion, Gray argues the loss to the United States Postal Service was overstated, and that it would have been determined to be far lower absent defense counsel's ineffective assistance at the sentencing hearing. If Grounds 1, 2, 3 and 4 of Gray's § 2255 motion are taken as arguments that his restitution amount should be lower, they must be denied because "a federal prisoner cannot challenge the restitution portion of his

sentence using 28 U.S.C. § 2255, because this statute affords relief only to prisoners claiming a right to be released from custody." United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003).

Alternatively, if Grounds 1, 2, 3, and 4 are taken as arguments for a lowering of Gray's sentence, they must also be denied. Taken as true, Ground 1 would result in a $500,000 decrease of the loss calculation, bringing the total loss to $3.3 million. This amount is still in the $2.5 million to $7 million range which resulted in an 18 level increase to Gray's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(J). As a result, Gray's sentence would not have changed had the $500,000 amount alleged been accurate. No prejudice resulted due to the allegations in Ground 1.

The record also refutes the allegations in Ground 1. While Gray argues defense counsel failed to expose the government's failure to factor stamps he maintained in inventory into its reconciliation of stamp purchases to stamps used, defense counsel elicited testimony from James Pitterle on that exact subject in which Pitterle admits his calculation "doesn't include whether or not they had stamps on hand before the beginning of the calendar year." USA v. Gray, 4:10 CR 83 RWS [Doc. # 221, Sent. Tr., pp. 37]. Because Gray's allegations in Ground 1 fail to show prejudice and are contradicted by the record, Ground 1 will be denied.

In Ground 2, Gray alleges counsel failed to present the majority of the evidence defense counsel had in his possession that would have aided the Court in evaluating the fair market value of services the government alleged as fraudulently taken. Gray also alleges in Ground 2 that defense counsel failed to understand and clearly explain the evidence he produced, resulting in an overstatement of loss by at least $1.6 million. I previously rejected the arguments Gray is presenting here that the fair market value of the loss should be calculated with the value of the

mail actually delivered. Id. at 20-21, 137-142, 150. The United States Court of Appeals for the Eighth Circuit agreed, stating: "The actual loss Gray's fraud caused was the value of the mail services SG Print claimed on its forms—and not, as Gray contends, only the value of the mail USPS actually delivered." Tremusini, 688 F.3d at 553.

As a result, even if defense counsel failed to produce all of the evidence at his disposal regarding the alleged inadequacies of the United States Postal Service, this evidence would not have affected the sentencing outcome. As I noted before, any amount of money Gray believes he is entitled to from the United States Postal Service would be the subject of a civil proceeding. USA v. Gray, 4:10 CR 83 RWS [Doc. # 221, Sent. Tr., pp. 20]. It is not an appropriate part of the calculation of loss in this criminal proceeding. Id. Because no prejudice resulted from the allegations in Ground 2, it will be denied.

Ground 3 alleges defense counsel failed to introduce evidence proving manipulation of data on postal forms by the United States Postal Service that resulted in the loss presented by the government being overstated. Defense counsel presented evidence at the evidentiary hearing in order to show manipulation by the United States Postal Service; however, I did not find his arguments on this subject credible. Instead, based on the evidence presented, I found that "SG was not overreporting the number of pieces of mail that it was sending through the U.S. Postal Service," and the United States Postal Service, in its reliance on these numbers, was not committing fraud or manipulation. Id. at 121, 150. No prejudice thus resulted from defense counsel's alleged failure to belabor a point that I had previously discounted. Furthermore, an assertion that the particular evidence presented by defense counsel on the subject of manipulation was not the strongest counsel had at hand, or that defense counsel's use of different evidence

would have changed the result of the sentencing hearing, is an unsupported conclusion which fails to overcome the "strong presumption of reasonableness of counsel's performance." Brown v. United States, 178 Fed. Appx. 590 (8th Cir. 2006). Ground 3 will therefore be denied.

Ground 4 of Gray's motion alleges defense counsel failed to present errors in the data presented by the government, resulting in an overstated loss calculation of at minimum $300,000. Taken as true, Ground 4 would result in a $300,000 decrease of the loss calculation, bringing the total loss to $3.5 million. This amount is still within the $2.5 million to $7 million range Gray originally fell under resulting in a 18 level increase to Gray's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(J), so Gray's sentence would not have changed had the $300,000 amount alleged been accurate. Furthermore, even if both Grounds 1 and 4 are taken as true together, the amount of loss would only be decreased from $3.8 million to $3 million. This would still be within the range of loss requiring an 18 level increase under the sentencing guidelines. As a result, because Gray has not shown his sentence would be different as a result of Ground 4, it will be denied.

Ground 5 of Gray's motion asserts several claims. The first claim is that defense counsel failed to invest adequate time in preparing for defendant's sentencing hearing. This allegation is refuted by the record. In his plea agreement, Gray acknowledged that:

The defendant is satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

USA v. Gray, 4:10 CR 83 RWS [Doc. # 125, Plea Agr., pp. 17].

At his plea hearing, Gray told the Court that he had been given enough time to discuss his case with his attorney, that he was satisfied with his representation, and that there was nothing he

thought his attorney should have done that he failed to do. USA v. Gray, 4:10 CR 83 RWS [Doc. # 220, Plea Tr., pp. 5-6]. Furthermore, though Gray claims defense counsel "crammed" his preparation for the sentencing hearing into the "few DAYS immediately prior to sentencing," the fact that defense counsel filed a twenty-five page sentencing memorandum four days prior to sentencing implies he made efforts to familiarize himself on the matter even further in advance than that, contradicting Gray's first claim in Ground 5. Gray also fails to show in his first claim under Ground 5 that, taken as true, any prejudice resulted from the allegations. He presents nothing that shows why preparation in the last few days before sentencing may have resulted in a greater sentence than was merited. Because Gray's first claim under Ground 5 is refuted by the record and fails to show prejudice, it will be denied.

Gray's second claim under Ground 5 is that defense counsel failed to present witnesses that would have supported and provided credibility to Gray's arguments at sentencing. Though defense counsel presented one witness and proffered the testimony of eight other witnesses, Gray argues that he should have presented postal employees to explain their improper adherence to postal regulations with particular emphasis on their manipulation of data, an expert in accounting to provide a professional opinion on the Government's findings, and an expert in postal regulations to explain how the failure of the Postal Service to adhere to regulations impacted the loss amount alleged by the Government.

With respect to defense counsel's failure to call a postal employee, I rejected the argument at sentencing that the United States Postal Service manipulated data. Further, because the number of items reported by SG was what I determined to be relevant to the loss, any testimony concerning the manipulation of weight would not have been relevant. As a result,

testimony to this effect from a postal employee would not have changed the sentence Gray ultimately received. Also, Gray does not name a single past postal employee who would have testified as to the alleged manipulation. Such a person may not exist. As a result, Gray's claim that testimony from a potentially nonexistent person would have changed the outcome of his sentencing hearing is both conclusory and contradicted by the record. Similarly, Gray neglects to show why defense counsel's failure to call an accounting expert or an expert in postal regulations prejudiced his case. The entirety of Gray's second claim under Ground 5 is therefore conclusory, fails to show prejudice, and will be denied.

Gray's third claim under Ground 5 asserts defense counsel failed to pursue the return to Gray of the $39,000 in stamps unlawfully possessed by Rick Decollo or, in the alternative, failed to pursue the application of the $39,000 to Gray's restitution. All of the stamps purchased by SG Print were subtracted from the total of the United States Postal Service's loss. As a result, the stamps in question in Gray's third claim under Ground 5 would have been included in the government's calculation, and no prejudice resulted from defense counsel's alleged failure to pursue the return of the stamps. Gray's third claim under Ground 5 will therefore be denied.

Gray's fourth claim under Ground 5 alleges defense counsel failed to make himself and Gray aware of the augmented loss figure contained in the plea agreement Gray entered into on April 20, 2011 prior to the change of plea hearing, featuring $993,064 greater loss to the United States Postal Service than Gray anticipated. This claim is contradicted by the record. Gray discussed the plea agreement with me at his plea hearing, prior to pleading guilty, and admitted everything was true, with the exception of the disputed loss amounts. Gray also was present when the government read the facts, which included the loss figures, and responded in the

affirmative when I asked him if he was admitting the facts described. Gray did not indicate any surprise as to the loss figures at any point during the plea hearing. Because Gray's fourth claim under Ground 5 is contradicted by the record, it will be denied.

Finally, Gray's fifth claim under Ground 5 alleges defense counsel failed to adequately communicate with defendant through the appeals phase of the case. Gray fails to show any prejudice that resulted from this alleged lack of communication. Thus, Gray's fifth claim under Ground 5 will be denied.

      B.      *An Evidentiary Hearing is Not Warranted*

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (internal quotation marks omitted). Because the records conclusively show that Gray is not entitled to relief as a matter of law, I will not hold an evidentiary hearing on this matter.

      C.      *Certificate of Appealability*

As Gray has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-8 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Robert Gray to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not hold an evidentiary hearing on this matter because the records conclusively show that Gray is not entitled to relief.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Gray has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                         _/s/ Rodney W. Sippel_
                                         RODNEY W. SIPPEL
                                         UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2014.